# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| REPURCHASE CORPORATION, | ) | No. 05 C 7075 |
|     Appellant, | ) | HONORABLE DAVID H. COAR |
| v. | ) | |
| IRA BODENSTEIN, et. al., | ) | |
|     Appellees, | ) | |
| In Re: | ) | Chapter 11 Proceeding |
| | ) | Bankruptcy Case No. 04 B 32933 |
| REPURCHASE CORPORATION, | ) | Appeal From the Honorable |
|     Debtor. | ) | Judge Jack B. Schmetterer |

## MEMORANDUM OPINION AND ORDER

This matter comes before this Court on Appellant Repurchase Corporation's appeal from the United States Bankruptcy Court, where final orders were entered denying confirmation of a Plan of Reorganization, ordering dismissal the bankruptcy case and denying reconsideration of the two previous orders. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a).

**I. FACTS**

On September 3, 2004, Repurchases Corporation (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. At the time of its filing, the Debtor was not an operating business. Its only assets were net operating loss carry-overs ("NOLs") for federal income tax purposes. These NOLs cannot be sold by themselves to third parties but nonetheless may be valuable to an entity contemplating Chapter 11 reorganization. On December 30, 2004, the Debtor filed a Disclosure Statement for Repurchases Corporation's Plan of Reorganization

(the "Initial Disclosure Statement") and a Plan of Reorganization (the "Initial Plan"). Under the Initial Plan, Leon Greenblatt ("Greenblatt"), the Debtor's President and current owner and/or controller of all outstanding shares of the Debtor, was to pay to the estate $100,000 and receive in consideration a minimum of 20% of the equity of the post-confirmation Debtor. The Debtor's unsecured creditors were to receive a pro-rata distribution of the $100,000, as well as the option to purchase a pro-rata share of 800 shares of new stock. The Initial Disclosure Statement provided that the issuance and distribution of the new stock was exempt from the securities laws pursuant to 11 U.S.C. §1145. The U.S. Trustee and the Securities and Exchange Commission ("SEC") filed objections to the Initial Plan arguing that the Initial Plan contemplated issuing the new stock in violation of 11 U.S.C. §1145, and, that it discharged the Debtor in violation of 11 U.S.C. §1141(d)(3). The Bankruptcy Court found as a matter of law that the Debtor could not rely on 11 U.S.C. §1145 to exempt the issuance of the new stock from the securities laws and it granted leave to amend the Initial Disclosure Statement and the Initial Plan.

On April 28, 2005, the Debtor filed the First Amended Disclosure Statement (the "Disclosure Statement") and the First Amended Chapter 11 Plan of Reorganization (the "Plan"). The Debtor also filed a Report of Balloting on the Debtor's First Amended Plan of Reorganization which showed that the Amended Plan was accepted by the two creditors who voted, Robinson Curley & Clayton, PC, a law firm that holds a claim against the Debtor, and Loop Properties, an affiliate of the Debtor's. Once reorganized, the Debtor intended to use the NOLs to offset future income or alternatively, to merge with another entity that had income to offset against the NOLs. Under the Plan, the reorganized Debtor proposed to again make pro-rata payment to its unsecured creditors from $100,000 to be contributed by one of the

owners of the Debtor. In exchange for that contribution, the contributing owner would receive 20% equity in the reorganized Repurchases entity. The Debtor again gave its unsecured creditors the option, under the Plan, of purchasing shares in the reorganized Repurchases entity at a set price.

The Bankruptcy Court held an evidentiary hearing on confirmation of the Plan on July 12, 2005. Greenblatt testified in support of confirmation. He explained that the Debtor's business was investing in securities and in the oil industry, but that the business had not purchased any securities since 2001 and had not operated prior to the bankruptcy filing because it could not obtain any investment income due to its unsecured debt. He further stated that as of the date of the hearing, he had no source of employment income; no cash or demand deposit accounts; and that he had not filed any tax returns for the years 2001, 2002, 2003 or 2004, because he had no taxable income, amongst other reasons. He stated that shareholder contributions by his wife in the amount of $500,000 would provide the source of capital to restart the investment business, but he had no written commitment by his wife to contribute that amount or a current balance sheet showing her assets and liabilities. He also testified that the newly reorganized Debtor would enter into a tax-type sharing agreement in which cash would be exchanged for use of the NOLs through some mechanism, possibly a leasing arrangement. However, Greenblatt conceded that no such agreements were in effect yet.

The Bankruptcy Court denied confirmation of the Plan. In reaching its decision, the Court noted that the Debtor had the burden of demonstrating feasibility and legality. The U.S. Trustee then filed the Motion to Dismiss Pursuant to 11 U.S.C. §1112(b) on the grounds that the Debtor had been in bankruptcy for almost a year, and had twice attempted unsuccessfully to

confirm a plan and that continuation of the case would only serve to further delay and prejudice the creditors. After notice and a hearing on July 25, 2005, the bankruptcy court dismissed the case pursuant to the Debtor's inability to effectuate a plan under 11 U.S.C. §1112(b). The Debtor then filed two separate motions to reconsider under Rule 59 of the Federal Rules of Civil Procedure, made applicable to this case under Rule 9023 of the Federal Rules of Bankruptcy Procedure. Counter to what was stated in the brief, the Debtor did not tender a second amended plan and second amended disclosure statement at or prior to the hearing. In the first motion, the Debtor alleged that there was clear error of law in denying confirmation. Further, in the second motion, the Debtor claimed that it had reached an agreement for funding of the plan and would have evidence of available funds. The Debtor also claimed it reached in principle an agreement with another entity that would allow the Debtor to engage in business and utilize the NOLs post-confirmation. At the dismissal hearing, the Debtor did not state that the evidence of funding existed but was unavailable when confirmation was denied. Nor did the Debtor offer any reason, cause or justification for the absence of such evidence at the confirmation hearing.

A hearing on the two motions to reconsider was held on August 23, 2005 during which the Debtor attempted to offer into evidence a copy of a merger agreement to fund the capital requirements of the reorganized Debtor. At the conclusion of the hearing, the Bankruptcy Court stated that it disagreed with the Debtor that it made a legal error and that it would decline to exercise its discretion "to reopen the proofs." On October 31, 2005, the bankruptcy court issued a formal Opinion denying the motions to reconsider and a third oral motion made by the Debtor during the hearing. Thereafter, the Debtor appealed to this Court.

## II. STANDARD OF REVIEW

On appeal in the United States District Court, a bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Monarch Air Serv. v. Solow (In re Midway Airlines, Inc.)*, 383 F.3d 663, 668 (7th Cir. 2004). A bankruptcy court's decision to dismiss a case pursuant to 11 U.S.C. § 1112(b) is reviewed for an abuse of discretion. *In re Woodbrook Associates*, 19 F.3d 312, 322 (7th Cir. 1994). A bankruptcy court's decision to deny motions for reconsideration made pursuant to Fed. R. Bankr. Pro. 9023, adopting Fed. R. Civ. Pro. 59, is also reviewed for an abuse of discretion. *Han v. Linstrom*, 2002 WL 31049846 at *3 (N.D.Ill.) (citing *Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1179 (7th Cir. 1982)).

## III. ANALYSIS

The Debtor brings three issues on this appeal. The first issue is whether the Bankruptcy Court erred when it denied confirmation of the Debtor's Plan. The second issue is whether the Bankruptcy Court erred when it dismissed the Chapter 11 bankruptcy case. The third and final issue is whether the Bankruptcy Court erred when it refused to consider, upon reconsideration of its motions denying confirmation and dismissing the case, new evidence offered by the Debtor to establish that it did have post-confirmation reorganization and funding agreements and a funding sources.

### A. Denial of the Plan

The Bankruptcy Court denied the Debtor's Plan of reorganization. The Order states that denial was "pursuant to the findings of fact and conclusions of law and 11 U.S.C. §1141(d)(3)(B), as stated from the bench." However, it is unmistakably clear from a review of

the record of the Plan confirmation hearing that the Bankruptcy Court denied the Plan primarily because it found the Plan to be unfeasible even though it did not explicitly state as much in the Order of denial. Consider the following excerpt from the July 12, 2005 proceedings:

> The Court: You have a burden to show me feasability and legality, and in this case they are about the same thing. You have to show me that engaging in business is feasible, and that if I allowed you to amend the plan so as to be clear and allowed you to amend the disclosure statement, which would have to be clear about this or that future intent, you would have to show me that you could engage in business and would engage in business both in terms of feasability and in terms of 1141(d)(3)...

So, while the Bankruptcy Court stated that the Debtor had not carried its burden of demonstrating it would be engaged in business post-confirmation and as such had not satisfied Section 1141(d)(3)(B), the Court also clearly explained that the Debtor's evidentiary failure was the reason the Plan was denied; pursuant both to a lack of feasibility under Section 1129(a)(11) and illegality under Section 1141(d)(3)(B). Thus, that the Court may have erred in its ruling under Section 1141(d)(3) is at most, merely collateral to its ultimate denial of the Plan.

Nevertheless, the Debtor argues that denial under Section 1129(a)(11) was clearly erroneous as well. Section 1129(a) states in relevant part:

> The court shall confirm a plan only if all of the following requirements are met:
> ...(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

The Bankruptcy Court found that the Debtor had not demonstrated by credible evidence that there would be funding for the $100,000 to be disbursed under the Plan or for the $500,000 that Mr. Greenblatt indicated would be invested to restart the Debtor's operations.

It is the Debtor's contention that its proposed Plan satisfied Section 1129(a)(11) because it was not likely that confirmation of the Plan would be followed by liquidation or a financial reorganization. It asserts that NOLs are not capable of liquidation because the Internal Revenue Code prevents the sale of NOLs. Also, the Debtor argues that even if the proposed funding and transactions set forth in the Plan did not materialize, there could be no liquidation; the Debtor would simply continue on as an empty shell entity with NOLs as its only assets. The Debtor further contends that no additional financial reorganization would be likely under the Plan. It concedes though, that if it does not realize funding for the Plan and its operations, it could not engage in business or operate in any real sense. Finally, the Debtor argues that the Bankruptcy Court misplaced its focus for determining feasibility of the Plan by directing its attention to the stated source of funding. It states that if the $100,000 for payment to unsecured creditors did not arrive, the creditors would have options under the Bankruptcy Code. This assertion is somewhat puzzling, since Section 1141(d)(3) provides that confirmation of a plan does not discharge a reorganized debtor if all of the following conditions exist-

> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> (B) the debtor does not engage in business after consummation of the plan; *and*
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.
> (emphasis added).

The Debtor has shown that the Plan did not provide for the liquidation of its NOLs, the entity's only assets; but that showing was irrelevant.[1] Thus, by not satisfying subsection 1141(d)(3)(B),

---

[1] This Court is not convinced that Plan satisfied Section 1141(d)(3)(A). Substantially all of the Debtor's assets have been liquidated; all that is left are the NOLs, which cannot be liquidated- only used in reorganization and reorganization under the Plan was not otherwise

the Debtor would not engage in business after consummation of the plan, confirmation of the Plan as it stood on July 12, 2005, would have the perverse effect of discharging the Debtor of its debts to its creditors; thus leaving its creditors without "options under the Bankruptcy Code."

Aside from illegality under Section 1141(d)(3), the Debtor takes an unwarranted narrow view of the feasibility test contained in Section 1129(a)(11). Case law is clear that the feasibility test of Section 1141(a)(11) focuses on whether the proposed plan offers a reasonable assurance of success and workability. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); *In re Monnier Bros.*, 755 F.2d 1336, 1340 (8th Cir. 1985); *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."). Section 1.20 of the Plan provides that the Contribution, the $100,000 to be paid by Greenblatt to the Debtor in exchange for a minimum of 20% of the equity of the post-confirmation Debtor, will be used to make cash distributions to the Debtor's creditors under the Plan. Under the Plan, the Contribution is the only source of funding of any distribution to unsecured creditors.

However, the Debtor provided no evidence that the Contribution would be available to fund the distribution to unsecured creditors at the confirmation hearing. An important aspect of feasibility is "that the plan proponent demonstrate that any necessary financing has been obtained, or is likely to be obtained." 7-1129 Collier on Bankruptcy-15th Edition Rev. P 1129.03 (citing *In re Made in Detroit, Inc.*, 299 B.R. 170. 179-80 (Bankr. E.D. Mich. 2003); *In re*

---

feasible because it had no funding. Thus, all of the conditions of Section 1141(d)(3) are met and there would be no discharge.

*Thurmon*, 87 B.R. 190 (Bankr. M.D. Fla. 1988)). Furthermore, "'section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." *Id.* (quoting *S & P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995)). Greenblatt himself testified that as of the date of the hearing he had no source of employment income, no cash or demand deposit accounts, that he had not filed any tax returns for the years 2001, 2002, 2003, or 2004, because he had no taxable income, amongst other reasons. Greenblatt further testified that his wife would fund the Contribution, but neither he or the Debtor provided any evidence that his wife had agreed to provide such funding or any evidence of her ability to do so. Greenblatt also testified, without providing any corroborating evidence, that his wife would contribute $500,000 necessary for restarting the business.

The Bankruptcy Court found that Mr. Greenblatt's testimony amounted to nothing more than speculation. Specifically, the Bankruptcy Court stated as follows:

> Now, what do we know about what it will need to restart the business if I were to confirm this plan? They would need some form of asset or capital to enable the company to buy securities so as to hold them for investment. We have nothing but sheer speculation from the witness without the slightest corroboration as to plans to raise a half a million dollars from his wife, without even a piece of paper from his wife making a promise to undertake to do that, and without the slightest evidence as to her resources.
>
> If it were only a question of waiting another day until they came in with a hundred thousand dollar check, we could certainly wait another today. But today was the day we were to decide whether he was going to engage in business. He has not demonstrated that his wife is going to put up a dime to support the capital necessary to buy and sell securities or other investments, let alone a half a million dollars. His speculation on being able to monetize the net operating loss is sheer speculation. We have no facts to demonstrate that he has a prospect for doing that, other than his own testimony.
>
> Now, in the face of the fact that he's not been engaged in business for the last four years, he is asking us to assume that his bare-bones conclusory testimony without corroboration or support, without the backing of assets by himself, without a

> demonstration of assets by his wife is somehow sufficient to show that he will
> engage in business after confirmation.

Given that the Debtor offered no evidence from which the Bankruptcy Court could conclude there was a reasonable chance of the Plan succeeding, this Court cannot hold that the Bankruptcy Court's denial of the Plan was clearly erroneous pursuant to feasibility. Furthermore, the Debtor has not provided any authority for the proposition that a bankruptcy court's misstated final pronouncement of the basis of denial renders that denial and the unambiguous analysis upon which the denial rests, clearly erroneous, when in fact the reasons for such denial were sufficiently stated elsewhere in the opinion.[2]

**B. Dismissal of the Case**

On July 25, 2005, the Bankruptcy Court dismissed the Debtor's Chapter 11 case pursuant to Section 1112(b), which provides that a court *shall* dismiss a case under Chapter 11, if the movant establishes cause. "Cause" is established in several different ways under Sec. 1112(b), but for purposes of this case, "cause" included the following: inability to effectuate a plan.[3] In its motion to dismiss, the U.S. Trustee alleged that cause existed because there was an inability to effectuate a plan and unreasonable delay caused by the Debtor that was prejudicial to creditors. The Court however, only cited the Debtor's inability to effectuate a plan as the basis

---

[2] It is understood that when the Bankruptcy Court stated "pursuant to the findings of fact and conclusions of law and 11 U.S.C. §1141(d)(3)(B), as stated from the bench.", that Court was incorporating the reasons for its judgment stated in the confirmation hearing into its Order of denial.

[3] Section 1112(b) was amended in 2005, did not become effective until 180 days after April 20, 2005, and is inapplicable with respect to cases commenced under Title 11 before the effective date. This case was filed in 2004.

for dismissal. The case had gone on for almost a year and the Debtor had submitted two unsuccessful plans of reorganization.

The Debtor now argues that the Bankruptcy Court misapplied Section 1112(b) because it did not find that the Plan was inherently flawed, that the proposed distribution was inadequate, or that there was any impropriety in the acceptance of the Plan. In the Debtor's view, the Bankruptcy Court merely required more specific evidence that funding of the Plan to restart the Debtor's business would materialize. The Bankruptcy Court dismissed the case because it found that it could not confirm the Plan and it found that it could not confirm the Plan because the Debtor could not point to any source of funding to effectuate the Plan. Few schemes can be more inherently flawed than those proposing a business plan of reorganization that has no prospective source of funds to effectuate its goals. *See e.g. In re Hickey Properties Ltd.*, 181 B.R. 173 (Bankr. D. Vt. 1995); *In re Ralph C. Tyler, P.E., P.S., Inc.*, 156 B.R. 995 (Bankr. N.D. Ohio 1993).

Moreover, the Debtor states that the Bankruptcy Court cited *Viper Mining Co. v. Diversified Energy Venture*, 311 B.R. 712 (Bankr.W.D.Pa. 2004) in support of its decision to dismiss the case. It goes on to explain why that case was distinguishable from the instant bankruptcy case. However, the Bankruptcy Court did not rely on *Viper Mining Co.* as support for *dismissing the case*. Instead, the Court relied on that case in support of its decision *not to vacate its order of dismissal* given that the Debtor had new belated evidence of funding; a decision this Court will review in the section below.

In short, a bankruptcy court has substantial discretion in dismissing a case under Section 1112(b). *In re Woodbrook Assocs.*, 19 F.3d 312, 322 (7th Cir. 1994). The Court gave the Debtor

-11-

two attempts at submitting a feasible plan; it could not do so. This Court cannot say that the Bankruptcy Court abused its discretion under Section 1112(b) in dismissing the case.

**C. Refusal to Consider New Evidence and Denial of the Motions to Reconsider Previous Rulings**

The Debtor filed two written motions for reconsideration, which the Bankruptcy Court denied. The first was entitled "Motion to Vacate Dismissal Order" (the "first motion") and was made pursuant to Rule 59 of the Federal Rules of Civil Procedure via Rule 9024 of the Federal Rules of Bankruptcy Procedure.[4] The second motion was entitled "Motion to Amend Order Denying Confirmation of the Amended Plan" (the "second motion") also made pursuant to the Fed. R. Civ. Pro. 59 via Fed. R. Bankr. Pro. 9024.

A court may grant a motion to amend a judgment under Rule 59 in three circumstances: 1) there is newly discovered evidence; 2) there has been an intervening change in the law; or 3) the judgment reflects a manifest error in the law or fact. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998); *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A court's decision to deny motions for reconsideration made pursuant to Fed. R. Civ. Pro. 59 is reviewed for an abuse of discretion. *Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1179 (7th Cir. 1982). As grounds for its first motion, the Debtor argued there was a need to correct a clear error of law or prevent manifest injustice under the third basis for amending an order under Fed. R. Civ. Pro 59. It specifically argued that dismissal of the Chapter 11 case was improper because it was

---

[4] Which is technically incorrect since Fed. R. Bankr. Pro. applies to Rule 60 of the Federal Rules of Civil Procedure, not Rule 59.

premised on denial of the Plan, which itself was erroneous. The Debtor contended that the Bankruptcy Court failed to consider all of the elements of Section 1141(d)(3) and failed to recognize that the plan was feasible. As explained above, the Court's reliance on Section 1141(d)(3) is not and was not material on review because the Court also clearly relied on the Plan's apparent lack of feasibility for denying confirmation and dismissal of the case. Furthermore, the actions of the Court, denial of confirmation and dismissal of the case, were not clearly erroneous or abusive of discretion, respectively. Therefore, the Court did not err when it denied the Debtor's first motion for reconsideration.

In its second motion, the Debtor argued that the Court incorrectly focused on its inability to implement the Plan at the confirmation hearing. The Debtor also stated in the second motion that it was "in the process of preparing, and will present to the Court prior to hearing on this motion, a proposed amended plan and disclosure statement. The Debtor has in principle reached an agreement for funding of the Plan, and will have evidence of available funds." The Debtor never stated which of the three bases of Rule 59 it was proceeding under in the second motion.

At the August 23, 2005 hearing on the motions for reconsideration, the Debtor argued that it should be allowed to present a merger agreement between the Appellant and Chiplease, Inc. (the "Merger Agreement") and a commitment for financing to the Bankruptcy Court, which would fund the distribution to unsecured creditors under the Plan. According to the Debtor, the Merger Agreement provided for it to merge with Chiplease, Inc. and monetize the NOLs, thereby presenting exactly the evidence the Bankruptcy Court was seeking at the Plan confirmation hearing.

When the Debtor requested the Court to take a copy of the Merger Agreement into evidence during the hearing on the motion for reconsideration, it was in reality making an oral motion (as it was entitled to do under Fed. R. Bankr. Pro. 9013) pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, which adopts Fed. R. Civ. Pro. 60. However, in the hearing, the Court and the Debtor agreed to proceed under Fed. R. Civ. Pro. 59 since the Debtor had alluded in its second motion to a funding agreement in principle. Thus the submission was deemed timely under Rule 59(b). An appellate court reviews a lower court's denial of relief under Rule 59 for an abuse of discretion. *Figgie Int'l, Inc.*, 966 F.2d at 1179. In its Opinion denying the written and oral motions, the Bankruptcy Court correctly explained that Rule 59(a) is not to be used as a means of presenting evidence that should have or could have been raised or was otherwise available before the judgment was issued.[5] *Ft. Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 n.4 (7th Cir. 1990).

The Bankruptcy Court noted that the Debtor failed to attach a copy of the Merger Agreement or the financing agreement to either of its motions for reconsideration. The Court explained that it gave the Debtor an opportunity to present its evidence at the confirmation hearing, but that the Debtor chose to rest on the testimony of its President, Greenblatt. The Court further recognized that under Fed. R. Civ. Pro. 59, made applicable to bankruptcy proceedings through Fed. R. Bankr. Pro. 9023, a bankruptcy court may reopen a judgment and take new evidence, but Rule 59 motions are not intended to give parties the opportunity to

---

[5] The same is true of Rule 60(b)(2). *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006) ("Rule 60(b)(2) authorizes a district judge to modify a judgment in response to 'newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).'").

relitigate issues with newly created evidence. The Debtor has not addressed the issue of whether the Court was correct in its finding that the Debtor had not satisfied the requirements regarding new evidence of Fed. R. Civ. Pro. 59 (or newly discovered evidence under Rule 60(b)(2) as the case may be) at the August 23, 2005 hearing on this appeal.

As stated earlier, a court may grant a motion to amend a judgment under Rule 59 in three circumstances: 1) there is newly discovered evidence; 2) there has been an intervening change in the law; or 3) the judgment reflects a manifest error in the law or fact. *Cosgrove*, 150 F.3d at 732; *Oto*, 224 F.3d at 606. Neither the Debtor's second written motion nor its oral motion specified under which of the three circumstances it moved for amendment of the Order of denial. Of the three recognized bases for grating a Rule 59 motion, only the first and the third have possible relevance here.

A court may amend a judgment if there has been a manifest error of law or fact. A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent" on the part of the court. *Oto*, 224 F.3d at 606 (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D.Ill.1997)). Such situations rarely occur, however, and granting the motion to reconsider on this ground should likewise be rare. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (*citing Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983)). As discussed in above sections of this Opinion, the Bankruptcy Court did not commit a manifest error of law or fact when it denied confirmation of the Plan for lack of feasibility or dismissed the Chapter 11 case for the inability to effectuate a feasible plan.

A court may also amend a judgment if there is newly discovered evidence, the absence of which can be excused. Nowhere in its written submissions or its oral argument in the August 23, 2005 hearing on the motions to vacate or amend, did the Debtor submit any causes or justifications for its failure to secure a financing commitment and merger partner, or to present evidence thereof at the confirmation hearing. In fact, throughout all stages of litigating this case, the Debtor held to the incorrect position that it was enough to satisfy Section 1129(a)(11) to simply state an intention to secure a financing commitment and merger partner under the Plan without providing any evidence of the availability of such funding. Int its second motion, the Debtor mentions what it would show in the future and the Debtor even admitted that it did not have a Merger Agreement ready when they filed the motion to reconsider denial of the plan. (Transcript of the proceedings of August 23, 2005, p.30, line 22).

In short, the Debtor's argument that the Bankruptcy Court erred in disregarding its evidence at the August 23 hearing has no support in the law. Newly created or prepared evidence does not necessarily correlate to newly discovered evidence, the absence of which is excusable. *See Biesek*, 440 F.3d at 412. The Bankruptcy Court acted well within its discretion when it denied admission of the Debtor's new evidence regarding funding and feasibility based on the Debtor not demonstrating that it could not have presented the evidence earlier. Thus, it was also within its discretion when it denied the Debtor's second written motion seeking amendment of the Order of denial of confirmation.

**IV. CONCLUSION**

For the reasons stated above, this court upholds the Bankruptcy Court's Order dismissing the Chapter 11 case, the Order denying confirmation of the Plan, the decision to not admit Debtor's new evidence, and finally, the Memorandum Opinion and Order Denying Debtor's (1) Motion to Amend Order Denying Confirmation of Amended Plan and (2) Motion to Vacate Dismissal Order.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: **March 24, 2008**